UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVERGREEN MEDIA HOLDINGS, LLC, and | § | |
| TONY DEROSA-GRUND | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | Civil Action No. 4:14-cv-00793 |
| v. | § | |
| | § | |
| WARNER BROS. ENTERTAINMENT, INC. | § | |
| and NEW LINE PRODUCTIONS, INC. | § | |
| *Defendants.* | § | |

**DEFENDANTS WARNER BROS. ENTERTAINMENT, INC. AND NEW LINE
PRODUCTIONS, INC.'S MOTION TO DISMISS OR STAY IN FAVOR OF ONGOING
ARBITRATION; OR IN THE ALTERNATIVE TO TRANSFER VENUE**

Charles L. "Chip" Babcock
State Bar No. 01479500
S.D. ID # 10982
cbabcock@jw.com
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax

**ATTORNEYS FOR DEFENDANTS WARNER
BROS. ENTERTAINMENT, INC. and NEW
LINE PRODUCTIONS, INC**.

**OF COUNSEL:**

Courtney T. Carlson
State Bar No. 24065004
S.D. ID # 1115579
ccarlson@jw.com
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas  77010
(713) 752-4200
(713) 752-4221 – Fax

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING ........................................................................ 1

ORAL ARGUMENT REQUESTED ............................................................................................ 2

SUMMARY OF THE ARGUMENT ........................................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 3

STATEMENT OF ISSUES ........................................................................................................ 12

STANDARDS OF REVIEW ..................................................................................................... 12

     I.     Stay Or Dismissal Under The Federal Arbitration Act ........................................ 12

     II.    Transfer Of Venue Under 28 U.S.C. § 1404(a) .................................................... 14

ARGUMENT ............................................................................................................................. 15

     I.     DeRosa-Grund's Claims Are Subject To Arbitration ......................................... 15

           A.     The Parties Agreed To Arbitrate – And Are Currently Doing So .......... 15

           B.     The Entirety of DeRosa-Grund's Complaint Falls Within The Scope Of The Broad Arbitration Agreements ......................................... 16

     II.    In Light Of The Foregoing, The Case Should Be Dismissed ............................. 20

     III.   In The Alternative, The Case Should Be Transferred To The Central District of California ........................................................................................... 20

CONCLUSION .......................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*7-Eleven, Inc. v. Digital Display Networks, Inc.*,
  No. 12-4292, 2013 WL 5305811 (N.D. Tex. Sept. 20, 2013) .................................................17

*Alford v. Dean Witter Reynolds, Inc.*,
  975 F.2d 1161 (5th Cir. 1992) ........................................................................................14, 20

*Am. Exp. Co. v. Italian Colors Restaurant*,
  133 S.Ct. 2304 (2013).............................................................................................................12

*AT&T Mobility LLC v. Concepcion*,
  131 S.Ct. 1740 (2011).......................................................................................................12, 20

*Atlantic Marine Const. Co., Inc. v. U.S. District Court for Western Dist. of Texas*,
  134 S.Ct. 568 (2013)........................................................................................................15, 20

*Banc One Acceptance Corp. v. Hill*,
  367 F.3d 426 (5th Cir. 2004) .................................................................................................13

*Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*,
  306 Fed. Appx. 188 (5th Cir. 2009).................................................................................13, 17

*Buckeye Check Cashing, Inc. v. Cardegna*,
  126 S.Ct. 1204 (2006).............................................................................................................12

*Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*,
  981 F.2d 752 (5th Cir. 1993) ...........................................................................................13,19

*Hendricks v. UBS Fin. Servs., Inc.*,
  546 Fed. Appx. 514 (5th Cir. 2013)........................................................................................14

*James v. Conceptus*,
  851 F. Supp. 2d 1020 (S.D. Tex. 2012) ...........................................................................14, 16

*Janmort Leasing, Inc. v. Econo-Car Int'l Inc.*,
  475 F. Supp. 1282 (E.D.N.Y. 1979) .......................................................................................18

*Kingsbury Nav. Ltd. v. Koch Supply & Trading, LP*,
  No. 4:12-1851, 2013 WL 4519798 (S.D. Tex. Aug. 24, 2013) ..............................................20

*Lim v. Offshore Specialty Fabricators, Inc.*,
  404 F.3d 898 (5th Cir. 2005) .................................................................................................14

*Midwest Mech. Contractors Inc. v. Commonwealth Constr. Co.*,
    801 F.2d 748 (5th Cir. 1986) ........................................................................13

*Petrofac, Inc. v. DynMcDermott Petrol. Ops. Co.*,
    687 F.3d 671 (5th Cir. 2012) ..................................................................18, 19

*Rouf v. Cricket Communications*,
    No. 13-2778, 2013 WL 6079255 (S.D. Tex. Nov. 19, 2013) ..................................20

*Sims v. Gay*,
    No. 4:09-cv-372, 2010 WL 1076064 (E.D. Tex. Feb. 26, 2010) ...........................15

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ......................................................................19

*Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.*,
    243 F.3d 906 (5th Cir. 2001) ......................................................................14

*Walton v. Rose Mobile Homes LLC*,
    298 F.3d 470 (5th Cir. 2002) ......................................................................19

*Will-Drill Res., Inc. v. Samson Res. Co.*,
    352 F.3d 211 (5th Cir. 2003) ..................................................................13, 19

OTHER CASES

*Armendariz v. Found Health Psychcare Servs., Inc.*,
    24 Cal. 4th 83 (Cal. 2000) ..........................................................................13

FEDERAL STATUTES

28 U.S.C. § 1404(a) .........................................................................2, 12, 14, 20

9 U.S.C. § 3 ...............................................................................................1, 2, 12

15 U.S.C. § 1051 .....................................................................................................8

RULES

Federal Rule of Civil Procedure 12(b)(3) ...................................................1, 2

OTHER AUTHORITIES

JAMS Comprehensive Arbitration Rules & Procedures ...................................19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVERGREEN MEDIA HOLDINGS, LLC, and | § | |
| TONY DEROSA-GRUND | § | |
|     *Plaintiff,* | § | |
| | § | |
| | § | Civil Action No. 4:14-cv-00793 |
| v. | § | |
| | § | |
| WARNER BROS. ENTERTAINMENT, INC. | § | |
| and NEW LINE PRODUCTIONS, INC. | § | |
|     *Defendants.* | § | |

**DEFENDANTS WARNER BROS. ENTERTAINMENT, INC. AND NEW LINE
PRODUCTIONS, INC.'S MOTION TO DISMISS OR STAY IN FAVOR OF ONGOING
<u>ARBITRATION; OR IN THE ALTERNATIVE TO TRANSFER VENUE</u>**

**NATURE AND STAGE OF THE PROCEEDING**

Plaintiffs Evergreen Media Holdings, LLC and Tony DeRosa-Grund (collectively, "DeRosa-Grund") and Defendants New Line Productions, Inc. and Warner Bros. Entertainment, Inc. (collectively, "New Line") have been engaged since June 2013 in an actively-litigated JAMS arbitration in California, conducted pursuant to a binding arbitration agreement. That arbitration was set for hearing in March 2014, but was delayed at the eleventh hour at DeRosa-Grund's request, pleading illness. DeRosa-Grund has now filed a wholly duplicative lawsuit in this Court, seeking relief based on the same agreements, the same claims, and the same set of facts as those which are at issue in the arbitration between the same parties. Despite DeRosa-Grund's argument to the Arbitrator that the arbitration should be stayed in favor of this case, on April 24, 2014, the Arbitrator ruled that the arbitration proceedings will proceed, and set the arbitration hearing dates for November 3-7, 2014.

New Line brings this motion to stay or dismiss the case pursuant to Section 3 of the Federal Arbitration Act ("FAA") and Federal Rule of Civil Procedure 12(b)(3). In the

alternative, New Line seeks to transfer any non-arbitrable claims to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a) and the forum-selection clauses in the parties' agreements.

## ORAL ARGUMENT REQUESTED

New Line requests oral argument. While the arbitration issue is straightforward, we believe the Court would benefit from hearing about the actions of DeRosa-Grund, including filing related litigation in this Court just this week and DeRosa-Grund's continuing representations in the arbitration proceeding.

## SUMMARY OF THE ARGUMENT

DeRosa-Grund's duplicative lawsuit is procedurally and substantively improper, and amounts to nothing more than a bad faith attempt to derail the parties' contractually mandated and previously initiated arbitration – an arbitration that, absent DeRosa-Grund's own request to continue the arbitration, would have *already taken plac*e.  This end-run around the arbitration proceedings must be seen for the cynical forum shopping that it is.  Under the circumstances, the FAA and applicable authority mandate that this case be stayed, at a minimum.  Furthermore, because *all* of the issues raised in DeRosa-Grund's Complaint are within the scope of the parties' broad agreement to arbitrate, the case should be dismissed in its entirety pursuant to the FAA and Federal Rule of Civil Procedure 12(b)(3).

In the alternative, and to the extent the Court determines that any of DeRosa-Grund's claims are non-arbitrable (all of his claims *are* clearly arbitrable), the parties' agreements contain a forum-selection clause mandating that any claim "that may not be arbitrated pursuant to applicable state or federal law may be heard only in a court of competent jurisdiction in Los Angeles County."  As such, any remaining claims must be transferred to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a).

Although DeRosa-Grund has resorted to gamesmanship in an effort to get around his ongoing participation in an active arbitration, such efforts must be rejected.  Accordingly, for the reasons discussed below, New Line respectfully requests that this motion be granted in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2009, pursuant to a written Quitclaim Agreement, and a later amendment thereto (the "Quitclaim Agreement"), New Line purchased all of DeRosa-Grund's rights, title, and interest in multiple literary properties, including but not limited to the screenplay for a motion picture project entitled "The Conjuring," the "life rights" of real-life paranormal investigators Ed and Lorraine Warren, and the Warrens' entire case file library.[1]  (Compl. ¶ 20) (Docket No. 1); Declaration of Michael J. O'Connor, attached hereto as Exhibit 1. *See* Ex. A. to Ex. 1.

Specifically, DeRosa-Grund transferred any and all "right, title, and interest" he had in the Property to New Line:

> [DeRosa-Grund] hereby sells, grants, conveys and assigns to New Line exclusively . . . all right, title and interest in the Property (all of the foregoing being collectively referred to as the "Rights") in and to the Property . . . .  With respect to works produced pursuant to the Rights, all copyrights, neighboring rights, trademarks and any and all other ownership and exploitation rights in the Property now or hereafter recognized . . . and the right to secure copyright and trademark registration and protection thereof . . . in New Line's own name . . . .

(O'Connor Decl., Ex. A (Quitclaim Agreement), ¶ 7.)

Quitclaim Agreement further provides:

> GOVERNING LAW/DISPUTE RESOLUTION:  **All controversies, claims or disputes between the parties to this Quitclaim Agreement arising out of or related to this Quitclaim Agreement or the interpretation, performance or breach thereof, including but not limited to, alleged violations of state or**

---

[1] All such materials are defined collectively in the parties' operative agreements as the "Property."  (Declaration of Michael J. O'Connor ("O'Connor Decl."), Ex. A, ¶ 1A.)

federal statutory or common law rights or duties, and the determination of the scope or applicability of this agreement to arbitrate ("**Dispute**"), except as set forth in Paragraphs 21(b), (c), and (d) below, shall be resolved according to the procedures set forth in Paragraph 21(a) below which **shall constitute the sole dispute resolution mechanism** hereunder:

(a) <u>Arbitration</u>: **All Disputes shall be submitted to final and binding arbitration.** The arbitration shall be initiated and conducted according to either the JAMS Streamlined (for claims under $250,000) or the JAMS Comprehensive (for claims over $250,000) Arbitration Rules and Procedures, except as modified herein, including the Optional Appeal Procedure, at the Los Angeles office of JAMS, or its successor ("JAMS") in effect at the time the request for arbitration is made (the "Arbitration Rules"). **The arbitration shall be conducted in Los Angeles County before a single neutral arbitrator appointed in accordance with the Arbitration Rules.** The arbitrator shall follow California law and the Federal Rules of Evidence in adjudicating the Dispute. The parties waive the right to seek punitive damages and the arbitrator shall have no authority to award such damages. The arbitrator will provide a detailed written statement of decision, which will be part of the arbitration award and admissible in any judicial proceeding to confirm, correct or vacate the award. **Unless the parties agree otherwise, the neutral arbitrator and the members of any appeal panel shall be former or retired judges or justices of any California state or federal court with experience in matters involving the entertainment industry.** Judgment upon the award may be entered in any court of competent jurisdiction. The parties shall be responsible for payment of their own attorneys' fees in connection with any proceedings under this Paragraph 21(a).

. . . .

(c) <u>Other Matters</u>: **Any Dispute or part thereof, or any claim for a particular form of relief (not otherwise precluded by any other provision of this Quitclaim Agreement), that may not be arbitrated pursuant to applicable law may be heard only in a court of competent jurisdiction in Los Angeles County.**

. . . .

(e) <u>Governing Law/Jurisdiction and Venue</u>: **This Quitclaim Agreement shall be governed and construed in accordance with the laws of the State of California applicable to contracts entered into and fully performed therein. The parties hereby submit to the exclusive jurisdiction and venue of the local, state and federal courts located in Los Angeles County.**

(*Id.* ¶ 21 (emphases added).)

In addition, New Line and DeRosa-Grund entered into a Producer Loanout Agreement ("Producer Agreement"), also dated November 11, 2009.  (Compl. ¶ 21.)  By the Producer Agreement, DeRosa-Grund agreed to serve as a producer in connection with "The Conjuring" motion picture, in exchange for compensation.  (*Id.*)  The Producer Agreement provides:

> GOVERNING LAW/DISPUTE RESOLUTION:   The laws of the State of California applicable to contracts signed and to be fully performed within the State of California shall apply to this Agreement.  **Any and all controversies, claims or disputes arising out of or related to this Agreement or the interpretation, performance or breach thereof, including but not limited to, alleged violations of state or federal statutory or common law rights or duties, ("Dispute")**, except as set forth in subparagraphs 25(b) and 25(c) below, shall be resolved according to the procedures set forth in subparagraph 25(a) below, which shall constitute the sole dispute resolution mechanism hereunder:

>> (a)    Arbitration:  In the event that the Parties are unable to resolve any Dispute informally, then such Dispute shall be submitted to final and binding   arbitration.   The arbitration shall be initiated and conducted according to either the Streamlined (for claims under $250,000) or the Comprehensive (for claims over $250,000) Arbitration Rules and Procedures, except as modified herein, including the Optional Appeal Procedure, at the Los Angeles office of JAMS, or its successor ("JAMS") in effect at the time the request for arbitration is made (the "Arbitration Rules").  **The arbitration shall be conducted in Los Angeles County before a single neutral arbitrator appointed in accordance with the Arbitration Rules.**  The arbitrator shall follow California law and the Federal Rules of Evidence in adjudicating the Dispute.  There shall be no award of punitive damages.  The arbitrator will provide a detailed written statement of decision, which will be part of the arbitration award and admissible in any judicial proceeding to enforce or vacate the award.  **Unless the Parties agree otherwise, the neutral arbitrator and the members of any appeal panel shall be retired judges or justices of any California state or federal court with substantial experience in matters involving the entertainment industry.**  If either party refuses to perform any or all of its obligations under the final arbitration award (following appeal, if applicable) within thirty (30) days of such award being rendered, then the other party may enforce the final award in any court of competent jurisdiction in Los Angeles County.  The party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, incurred in enforcing the award, to be paid by the party against whom enforcement is ordered.

>> . . . .

5

      (c)    <u>Other Matters</u>:  **Any Dispute or portion thereof, or any claim for a particular form of relief (not otherwise precluded by any other provision of this Agreement), that may not be arbitrated pursuant to applicable state or federal law may be heard only in a court of competent jurisdiction in Los Angeles County**.

(O'Connor Decl., Ex. B (Producer Agreement), ¶ 25 (emphases added).)

DeRosa-Grund admits that the Quitclaim Agreement and the Producer Agreement (the "Agreements") "are valid, binding, and enforceable contracts."  (Compl. ¶ 49.)  Nevertheless, after executing the Agreements, DeRosa-Grund flouted them repeatedly.  Specifically, in direct violation of the Agreements, he (1) filed federal trademark applications for "The Conjuring" name for motion pictures, television series, graphic novels, video game software, clothing and board games (despite having sold such rights to New Line under the Quitclaim Agreement); (2) registered with the Motion Picture Association of America (the "MPAA") the titles "The Conjuring 2-6" or "The Conjuring Part II-Part VI" (in an effort to block New Line from using these titles); and (3) purported to enter into an agreement with Lionsgate Entertainment for the production and distribution of a television show entitled "The Conjuring" improperly based on New Line's "The Conjuring" motion picture without complying with New Line's contractual right of first negotiation and last refusal.  (*See* O'Connor Decl., Ex. C (Amended Demand for Arb.))

On June 5, 2013, pursuant to the binding dispute resolution provisions in the Agreements, New Line filed a Demand for Arbitration with JAMS, thereby initiating proceedings before the Honorable Richard C. Neal, a retired Justice of the California Court of Appeal, whom the parties jointly selected.  New Line filed an Amended Demand on June 18, 2013.  (*Id.*, Ex. C.)

By the Amended Demand, New Line asserted claims against DeRosa-Grund for breach of contract and interference with New Line's trademark, intellectual property and other rights, arising from DeRosa-Grund's repeated violations of the Agreements described above.  (*Id.* at 3.)

6

DeRosa-Grund never challenged the arbitrability of New Line's claims.  Instead, he actively assisted in selecting the Arbitrator, filed two motions for interim relief, served discovery, participated in hearings, and designated experts.  (*See* O'Connor Decl. ¶ 7.)  Notably, he also asserted counterclaims of his own on September 3, 2013, for (1) breach of the Quitclaim Agreement; (2) breach of the implied covenant of good faith and fair dealing arising from the Quitclaim Agreement; (3) intentional interference with economic relations; and (4) declaratory relief.  (O'Connor Decl.., Ex. D.)  On December 19, 2013, DeRosa-Grund sought leave to amend his counterclaims to assert new claims for fraud in the inducement of the Quitclaim Agreement and promissory estoppel, and New Line consented to such amendment.  (*Id.,* Ex. E.)  As discussed more fully below, every single one of DeRosa-Grund's counterclaims in the arbitration have simply been copied and pasted nearly verbatim into the Complaint that initiated this action before this Court.

The arbitration hearing was originally set for March 3-7, 2014, in Santa Monica, California.  (*Id.,* Ex. F.)  On January 28, 2014, with the arbitration hearing a mere five (5) weeks away, fact discovery all but complete, and expert witnesses designated and counter-designated, counsel for DeRosa-Grund notified opposing counsel and the Arbitrator that DeRosa-Grund had been admitted to a hospital in Houston, Texas "with chest pains and extremely elevated blood pressure."  (*Id.,* Ex. I.)  A telephonic conference to discuss DeRosa-Grund's condition was held on January 29, 2014, at which time counsel for DeRosa-Grund represented to the Arbitrator and opposing counsel that DeRosa-Grund had a "mini-stroke" and would not be able to participate in an arbitration until Summer 2014.  (*Id.,* Ex. I.)  In reliance on DeRosa-Grund's representations, the Arbitrator vacated the pending deposition of DeRosa-Grund (scheduled just two days later) and hearing dates, posted a list of available dates for a rescheduled arbitration hearing, and

requested that the parties meet and confer by February 14, 2014 to agree on new dates for DeRosa-Grund's pending deposition, a final pretrial conference, and the rescheduled arbitration hearing.  (*Id.,* Exs. G and H.)

Following the January 29, 2014 conference, counsel for New Line made numerous attempts to contact counsel for DeRosa-Grund, but received no response.  (O'Connor Decl. ¶ 8.) After failing to respond for two months, on March 28, 2014, DeRosa-Grund, represented by new counsel, filed this lawsuit, asserting the exact *same* claims based on the very *same* facts against the *same* entities for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) tortious interference with business relations, (4) fraud in the inducement, (5) promissory estoppel, (6) conversion, (7) declaratory judgment, and (8) violation of Section 43(a) of the Lanham Act.  (*See* Compl.)

Indeed, DeRosa-Grund's newly-filed Complaint baldly recycles many allegations contained in his counterclaims currently pending in the arbitration, as the following table illustrates:

|  | **Arbitration Counterclaims** | **Complaint** |
|---|---|---|
| **Breach of Contract** | "By engaging in the above-referenced conduct, including but not limited to:<br><br>(1) failing to timely select specific files from the Case Files for development and subsequently seeking to change its selection;<br><br>(2) filing applications to register the Name with the PTO and the MPAA;<br><br>(3) failing to pay Respondents the additional payments/deferments that they are owed under Paragraph 5 of the OQA and the contingent compensation they are owed under Paragraph 5 of the Producer | "By engaging in the above-referenced conduct, including but not limited to:<br><br>(i) failing to timely select specific files from the Case Files for development and subsequently seeking to change its selection;<br><br>(ii) filing applications to register the Name with the PTO and the MPAA;<br><br>(iii) failing to pay Plaintiffs the additional payments/deferments that they are owed under Paragraph 5 of the OQA . . . and the contingent compensation they are owed under |

|  | **Arbitration Counterclaims** | **Complaint** |
|---|---|---|
|  | Agreement; and<br><br>(4) failing to provide Respondents with the periodic statements or profit participation payments they are owed under the Producer Agreement, New Line has breached the Agreements."<br><br>(O'Connor Decl., Ex. E, p. 11.) | Paragraph 5 of the Producer Agreement . . . . [and]<br><br>(v) failing to provide Plaintiffs with the profit participation payments they are owed under the Producer Agreement, New Line has breached the Agreements."<br><br>(Compl. ¶ 50.) |
| **Breach of Implied Covenant of Good Faith and Fair Dealing** | "New Line acquired the rights to develop and produce sequels and remakes to the Picture, as well as other motion pictures based on the Case Files, under the Agreements.  In addition, New Line agreed to utilize Mr. DeRosa-Grund's producer services….<br><br>New Line has acted arbitrarily and unreasonably in:<br><br>(1)  refusing to employ Mr. DeRosa-Grund as a producer in connection with the sequel to the Picture and any and all other motion pictures based on the Case Files;<br><br>(2) failing to pay Mr. DeRosa-Grund all compensation he is owed under the Agreements….<br><br>New Line has acted in bad faith and prevented Evergreen Media and Mr. DeRosa-Grund from receiving the fruits of the bargain under the Agreements.<br><br>(O'Connor Decl., Ex. E, p. 13.) | "New Line acquired the rights to develop and produce sequels and remakes to "The Conjuring" . . . under the Agreements.  In addition, New Line agreed to utilize Mr. DeRosa-Grund's producer services . . . ."<br><br>"New Line has acted arbitrarily and unreasonably in:…"<br>. . .<br>"…refusing to employ Mr. DeRosa-Grund as a producer in connection with the sequel to "The Conjuring," . . . and any and all other motion pictures based on the Case Files"<br>. . .<br>"…failing to pay Mr. DeRosa-Grund all compensation he is owed under the Agreements . . . ."<br><br>New Line has acted in bad faith and prevented Plaintiffs from receiving the fruits of the bargain under the Agreements.<br><br>(Compl. ¶¶ 57-58.) |

| | Arbitration Counterclaims | Complaint |
|---|---|---|
| **Intentional Interference with Economic Relations / Tortious Interference with Business Relations** | "At all relevant times, there were in effect, valid contracts between Respondents and Lionsgate for the production of a television show entitled 'The Conjuring.'  Claimants knew of Respondents' contract with Lionsgate and knew that the television show was not based on the Picture, and nevertheless intentionally induced Lionsgate to breach its contractual relationship with Respondents." <br><br> (O'Connor Decl., Ex. E, pp. 13-14.) | "At all relevant times, there were in effect valid contracts between Plaintiffs and Lionsgate for the production of a television show entitled 'The Conjuring.'  Defendants knew of Plaintiffs' contract with Lionsgate and knew that the television show was not based on rights granted exclusively to Defendants, but Defendants nevertheless intentionally interfered with Plaintiffs' contract with Lionsgate and induced Lionsgate to breach its contractual relationship with Plaintiffs." <br><br> (Compl. ¶ 62.) |
| **Fraud In The Inducement** | "During negotiations for the Agreements, New Line made representations relating to Mr. DeRosa-Grund's producer services in connection with any motion picture based on the Case Files. <br> . . . <br> However, New Line never had any intention of utilizing Mr. DeRosa-Grund as a producer in connection with any sequels to the Picture or other pictures based on the Case Files. <br> . . . <br> New Line made these false representations with the intent to induce Respondents to rely upon them and, more specifically, to induce Mr. DeRosa-Grund to enter into the Agreements." <br><br> (O'Connor Decl., Ex. E, pp. 14-15.) | "During negotiations for the Agreements, New Line made representations relating to Mr. DeRosa-Grund's producer services in connection with any and all motion picture based on the Case Files. <br> . . . <br> Defendants, however, never had any intention of utilizing Mr. DeRosa-Grund as a producer in connection with any sequels to 'The Conjuring' or other pictures based on the Case Files. <br> . . . <br> Defendants made these false representations with the intent to induce Plaintiffs to rely upon them and, more specifically, to induce Mr. DeRosa-Grund to enter into the Agreements." <br><br> (Compl. ¶¶ 67-69.) |
| **Promissory Estoppel** | "New Line promised that it would tie Mr. DeRosa-Grund to sequels and other motion pictures related to the Picture, and that it would pay for those rights." <br><br> (O'Connor Decl., Ex. E, p. 15.) | "Defendants promised that they would tie Mr. DeRosa-Grund to sequels and all other motion pictures related to 'The Conjuring,' and that they would pay for those rights." <br><br> (Compl. ¶ 74.) |

As is readily apparent, the vast majority of the Complaint has simply been lifted from DeRosa-Grund's pleadings in the ongoing arbitration.  The only legal claims that appear to be newly alleged are his claims for conversion, and for violation of Section 43(a) of the Lanham Act (*See* Compl.), but these "new claims" – based on the same set of facts – are simply repackaged from DeRosa-Grund's prior pleadings in the arbitration.[2]

DeRosa-Grund's claim for conversion is clearly duplicative of his breach of contract claim, in that it alleges that New Line failed to pay monies purportedly owed to DeRosa-Grund under the Quitclaim Agreement in connection with a production entitled "Annabelle" and a theatrical motion picture sequel to "The Conjuring."  (Compl. ¶¶ 78-80.)  Moreover, the conversion claim rests on allegations asserted in DeRosa-Grund's amended counterclaims filed in the arbitration:

> In addition, it has been reported, and New Line has publicly confirmed in the press, that in addition to a sequel to the Picture, Claimants are developing three other projects based on the Case Files, including the film currently entitled "Annabelle."  However . . . Claimants have refused to engage Mr. DeRosa-Grund's producer services, compensate him for the rights, or provide him with a producer credit in connection with the anticipated sequel to the Picture, the "Annabelle" movie, or any other prequel, sequel, remake, or spinoff of the Picture.

(O'Connor Decl., Ex. E, at 10.)  These allegations reappear in DeRosa-Grund's conversion claim, albeit with slightly different wording.  (*See, e.g.,* Compl. ¶ 79 ("However, Defendants refused to pay anything to [DeRosa-Grund] in connection with the production of 'Annabelle.'").)

DeRosa-Grund's Lanham Act claim simply alleges that New Line has failed to adequately credit DeRosa-Grund for his role in the development of "The Conjuring."  (Compl. ¶

---

[2] Immediately after DeRosa-Grund filed this lawsuit, New Line concurrently moved for relief in the ongoing arbitration proceedings, requesting that in light of his gamesmanship, the Arbitrator reschedule DeRosa-Grund's pending deposition and the arbitration hearing dates for the earliest possible opportunity, and for sanctions against DeRosa-Grund.  (O'Connor Decl., Ex. I.)  On April 24, 2014, the Arbitrator ruled that the arbitration proceedings will resume, and rescheduled the arbitration hearing dates for November 3-7, 2014.  (*Id.*, Ex. J.)

87.)   The Complaint further alleges that New Line "engaged in an intentional, willful, and deliberate campaign in the media and press designed to purposefully hide and obscure the source of origin of the 'The Conjuring.'"   (*Id.*)  This, too, is duplicative of DeRosa-Grund's allegations in the ongoing arbitration.  (*See* O'Connor Decl., Ex. E, at 12 ("New Line has engaged in an ongoing pattern and practice of . . . trying to minimize [DeRosa-Grund's] pivotal role with the Picture . . . . New Line purposely sent out public relations stories with fabricated scenarios about the Picture's origins that intentionally omitted reference to Mr. DeRosa-Grund.".)  Accordingly, DeRosa-Grund's Lanham Act claim similarly appears to merely repackage prior allegations from the arbitration.

## STATEMENT OF ISSUES

1.      Whether DeRosa-Grund's lawsuit should be mandatorily stayed or dismissed pursuant to Section 3 of the Federal Arbitration Act.

2.      Whether, in the alternative, the case should be transferred to the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) and the forum-selection clauses in the parties' agreements.

## STANDARDS OF REVIEW

### I.      <u>Stay Or Dismissal Under The Federal Arbitration Act</u>

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (internal quotations and citations omitted).  Consistent with the FAA, "courts must 'rigorously enforce' arbitration agreements according to their terms."  *Am. Exp. Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 (2013) (citation omitted); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, 1207 (2006) (explaining that the FAA "embodies the national policy favoring arbitration").

Section 3 of the FAA requires a mandatory stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement.  9 U.S.C. § 3; *Midwest Mech. Contractors Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986).  District courts conduct a two-step inquiry to determine whether to grant a motion to stay or dismiss under Section 3 in favor of arbitration:

> First, the court must determine whether the parties agreed to arbitrate the dispute.  Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable.  When considering the first question, there are two considerations: (1) whether there is a valid agreement between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.

*Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations and citations omitted).[3]

When determining whether an issue is within reach of an agreement to arbitrate, the Fifth Circuit distinguishes between broad and narrow arbitration clauses.  *Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993).  "Narrow arbitration clauses are ones where the language of the clause requires the arbitration of disputes 'arising out of' the agreement, whereas broad arbitration clauses are those where the language of the clause requires arbitration of *any* dispute that arises out of or relates to "the agreement, or disputes that are 'in connection with' the agreement.'"  *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed. Appx. 188, 192 (5th Cir. 2009) (emphasis added).  If the clause is broad, "any litigation arguably arising under such a clause should be stayed pending the

---

[3] The validity of an agreement to arbitrate is decided according to state law.  *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  Here, California law applies, as the Agreements specify that they shall be governed and construed in accordance with California law.  (O'Connor Decl., Ex. A ¶ 21(e), Ex. B ¶ 25.)  Like federal law, California law favors enforcement of arbitration agreements.  *See, e.g., Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97 (Cal. 2000).  "Thus, under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or inequity for the revocation of any contract."  *Id.* at 98 (citations omitted).

arbitrator's decision as to whether the dispute is covered." *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.*, 243 F.3d 906, 909 (5th Cir. 2001) (citations omitted).

In any event, "[i]n view of the policy favoring arbitration, [the Fifth Circuit] ordinarily resolve[s] doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *Hendricks v. UBS Fin. Servs., Inc.*, 546 Fed. Appx. 514, 518 (5th Cir. 2013) (citations omitted). Thus, "a valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (internal quotations and citations omitted).

Although the district court's issuance of a stay under Section 3 of the FAA is mandatory if this two-step inquiry is satisfied, the Fifth Circuit further holds that when all of the issues raised in the district court must be submitted to arbitration, the court may dismiss, rather than stay, the case. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citations omitted); *see also James v. Conceptus*, 851 F. Supp. 2d 1020, 1039-40 (S.D. Tex. 2012). The Fifth Circuit recognizes that such dismissal is proper pursuant to Rule 12(b)(3). *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) (citations omitted).

## II. Transfer Of Venue Under 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any other district or division to which all parties have consented." This analysis weighs heavily in favor of transfer where the parties have a contractual forum-selection clause: "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."

*Atlantic Marine Const. Co., Inc. v. U.S. District Court for Western Dist. of Texas*, 134 S.Ct. 568, 581 (2013).

## ARGUMENT

### I.   DeRosa-Grund's Claims Are Subject To Arbitration

### A.   The Parties Agreed To Arbitrate – And Are Currently Doing So

As a threshold matter, it is undisputed that there is a valid agreement to arbitrate between the parties.  As noted above, the Agreements expressly provide that "[a]ll Disputes shall be submitted to final and binding arbitration."  (O'Connor Decl., Ex. A, ¶ 21, Ex. B, ¶ 25.)[4]  The Agreements – including the arbitration provisions – are binding on DeRosa-Grund, a signatory to the contracts.  Indeed, DeRosa-Grund admits that the Agreements containing the arbitration provisions are "valid, binding, and enforceable contracts."  (Compl. ¶ 20.)  As such, there is a valid agreement between the parties to arbitrate their disputes, as evidenced by DeRosa-Grund's willing participation over the past nine (9) months in the ongoing arbitration proceedings in California.

In *Sims v. Gay*, No. 4:09-cv-372, 2010 WL 1076064 (E.D. Tex. Feb. 26, 2010)[5], the district court confronted a similar situation.  There, the parties arbitrated a dispute to near-completion.  *Id.* at *1.  The plaintiffs, however, after waiting more than seven months for the arbitrator's ruling, filed a suit in the district court seeking to resolve the same claims, and the defendants moved to dismiss or stay the suit pending the resolution of the arbitration proceedings.  *Id.*  In evaluating first whether the parties had agreed to arbitrate, the district court noted:  "[b]ecause Plaintiffs apparently initiated the arbitration proceedings pursuant to [a

---

[4] Notably, DeRosa-Grund failed to attach the Agreements to his Complaint – despite the fact that his action entirely relies on the Agreements.

[5] *See* Ex. K.

contractual arbitration] provision, the Court questions whether a finding of validity of the agreement is even necessary." *Id.* at *2. Instead, "[h]aving found an agreement to arbitrate, which the Plaintiffs' notably invoked and acted under for a period of months prior to filing suit, the more important question for the Court to address is whether the issues before the Court are within the scope of the agreement." *Id.*

So too here. Although DeRosa-Grund did not initiate the arbitral proceedings, he has been an active participant in the proceedings for the past nine (9) months, and is prosecuting the same counterclaims in that action. (O'Connor Decl. ¶7, Ex. E.) DeRosa-Grund assisted in selecting the Arbitrator, participated in and completed fact discovery (with the exception of two depositions – including his own – which have yet to occur), has filed two motions before the arbitrator seeking interim relief, has retained and disclosed expert witnesses for the arbitration hearing, and has otherwise been an active litigant in those proceedings. (O'Connor Decl. ¶ 7.) As such, DeRosa-Grund cannot possibly challenge the validity of the parties' agreement to arbitrate.

B.    **The Entirety of DeRosa-Grund's Complaint Falls Within The Scope Of The Broad Arbitration Agreements**

Because there is a valid agreement to arbitrate, the Court must next decide whether the dispute is covered by the parties' agreement. *James*, 851 F. Supp. 2d at 1027. Consistent with the strong national policy favoring arbitration, "[t]he Supreme Court recognizes a presumption of arbitrability when there is a valid agreement." *Id.* (citations omitted).

Here, the arbitration clauses provide that all "Disputes" shall be arbitrated, and further define "Disputes" as "[a]ll controversies, claims or disputes between the parties to this [] Agreement *arising out of or related to this [] Agreement* . . . including, but not limited to . . . *the determination of the scope or applicability of this agreement to arbitrate*." (O'Connor Decl., Ex.

A, ¶ 21, Ex. B, ¶ 25 (emphasis added).)  These are broad arbitration clauses.  *See Baudoin*, 306 Fed. Appx. at 192 ("broad arbitration clauses are those where the language . . .  requires arbitration of any dispute that arises out of or relates to the agreement").

Under the circumstances, it is clear that all of DeRosa-Grund's claims – which are wholly duplicative of claims being pursued in the ongoing arbitration – are arbitrable.  *See 7-Eleven, Inc. v. Digital Display Networks, Inc.*, No. 12-4292, 2013 WL 5305811, at *6 (N.D. Tex. Sept. 20, 2013) ("Here, it appears that all of the issues before the Court are arbitrable, since the parties are already in arbitration proceedings regarding those same issues.").[6]

DeRosa-Grund alleges eight causes of action:  (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) tortious interference with business relations, (4) fraud in the inducement, (5) promissory estoppel, (6) conversion, (7) declaratory judgment, and (8) violation of Section 43(a) of the Lanham Act.  (*See* Compl.)

All of these claims are based on DeRosa-Grund's alleged rights under the Agreements, and are clearly within the scope of the arbitration agreement, as they "arise[] out of or relate[] to [the] [Agreements], or the interpretation, performance or breach thereof."  (O'Connor Decl., Ex. A ¶ 21, Ex. B ¶ 25.)  The claims for breach of contract, breach of the implied covenant, tortious interference with business relations, and declaratory judgment all expressly seek relief under the Agreements.  (Compl. ¶¶ 50, 54-57, 63, 84-85.)  Furthermore, DeRosa-Grund's claim for promissory estoppel alleges wrongdoing by New Line with respect to DeRosa-Grund's decision to enter into the Agreements.  (Compl. ¶ 74.)  His fraud in the inducement claim alleges that New Line fraudulently induced DeRosa-Grund to enter into the Agreements.  (Compl. ¶ ¶ 67-72.)  His claim for conversion asserts that New Line has failed to pay DeRosa-Grund amounts

---

[6] *See* Ex. L.

owed under the Agreements.  (*Id.* ¶¶ 78-79.)  Finally, DeRosa-Grund's Lanham Act claim asserts

a failure by New Line to afford credit to DeRosa-Grund for the alleged rights granted under the

Agreements.  (*Id.* ¶¶ 88-89.)  As illustrated above (*supra* at pp. 8-10), each of these claims are

either copied verbatim from DeRosa-Grund's amended counterclaims in the arbitration, or rest

on allegations asserted therein.  (*Supra* at pp. 8-10)[7]

In short, there can be no dispute whatsoever that each of DeRosa-Grund's claims fall

within the broad arbitration clauses agreed to by the parties here.[8]

In the unlikely event there is any doubt as to the arbitrability of the claims raised in

DeRosa-Grund's Complaint (and there is not), the parties expressly agreed to leave questions of

arbitrability to the Arbitrator.  (O'Connor Decl., Ex. A, ¶ 21, Ex. B, ¶ 25.)  Thus, the Court must

nonetheless stay or dismiss this litigation pending a determination by the Arbitrator as to whether

any new claims not already being arbitrated fall within the parties' agreements.  *See Petrofac,*

*Inc. v. DynMcDermott Petrol. Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("[t]he question 'who

has the primary power to decide arbitrability' turns upon what the parties agreed about *that*

---

[7] In his arbitration filings, DeRosa-Grund has expressly acknowledged the arbitrability of all issues related to this dispute.  Specifically, in his amended counterclaims, he states: "Moreover, as the parties have submitted this matter to arbitration, New Line's refusal to compensate Mr. DeRosa-Grund based on its own conclusion that he has breached the Agreements subverts the arbitration process and usurps the role of the arbitrator in deciding the dispute.  More specifically, Paragraph 21 of the [Quitclaim Agreement] provides that all controversies, claims or disputes between the parties shall be resolved solely through arbitration.  Thus, New Line is specifically precluded from taking unilateral self-help actions that circumvent the arbitration process."  (O'Connor Decl., Ex. E, at 9.)  DeRosa-Grund cannot possibly explain how his filing of the instant lawsuit does not directly conflict with his prior admissions of arbitrability.

[8] In any event, even if some of DeRosa-Grund's claims were not subject to arbitration – and they clearly are – a stay of this action is still proper.  "[F]ederal courts have not hesitated to stay the litigation of non-arbitrable claims until the conclusion of arbitration, provided that economies of time and effort for the court and parties can thereby be achieved and that 'the party seeking the stay can demonstrate that he will not hinder the arbitration, that the arbitration will be concluded within a reasonable amount of time, and that the delay will not work an undue hardship on the party opposing the stay.'"  *Janmort Leasing, Inc. v. Econo-Car Int'l Inc.*, 475 F. Supp. 1282, 1293 (E.D.N.Y. 1979).

matter.") (citation omitted).[9]   Thus, at a minimum, "the action should be stayed and the arbitrator[] permitted to decide whether the dispute falls within the clause."   *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d at 754 (citations omitted).

Finally, there is no federal statute or policy that renders DeRosa-Grund's claims non-arbitrable, particularly in light of the broad federal policy favoring arbitration.   *Will-Drill Res., Inc.*, 352 F.3d at 214.   Indeed, DeRosa-Grund's only claim based on a federal statute, his Lanham Act claim, is not subject to any legal constraints rendering such claim non-arbitrable, and as discussed above, rests on the same allegations asserted by DeRosa-Grund in the ongoing arbitration.   Moreover, "[c]ourts have routinely held that claims falling under the Lanham Act are arbitrable."   *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 724 (9th Cir. 1999) (citing *Doctor's Assoc., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).   DeRosa-Grund therefore cannot demonstrate that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue" in his Lanham Act claim (much less his remaining state law claims).   *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002).

Simply put, DeRosa-Grund's claims are either *already being arbitrated* in an ongoing California arbitration, or are expressly subject to the Agreements' broad arbitration clauses. Under such circumstances, a stay of this litigation – at a minimum – is mandatory.  9 U.S.C. § 3.

---

[9] The parties' agreement to arbitrate arbitrability is further evidenced by their agreement to conduct such arbitration in accordance with the JAMS rules and procedures. (O'Connor Decl., Ex. A, ¶ 21(a), Ex. B, ¶ 25(a).)   JAMS Rule 11 specifically empowers the arbitrator to "determine jurisdiction and arbitrability issues as a preliminary matter." JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(c) (available at http://www.jamsadr.com/rules-comprehensive-arbitration); *see Petrofac*, 687 F.3d at 675 (explaining that when the arbitration rules provide the arbitrator with authority to determine the scope of its own jurisdiction, questions concerning arbitrability should be made by the arbitrator).

## II.     In Light Of The Foregoing, The Case Should Be Dismissed

Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *Concepcion*, 131 S.Ct. at 1748.  In the Fifth Circuit, courts dismiss a case without prejudice "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford*, 975 F.2d at 1164.  Here, because, as discussed above, all of DeRosa-Grund's claims in this lawsuit are either currently being arbitrated or are clearly arbitrable, the Court should dismiss the case in its entirety. *See, e.g., Rouf v. Cricket Communications*, No. 13-2778, 2013 WL 6079255, at *7 (S.D. Tex. Nov. 19, 2013) (dismissing case where "all of the plaintiffs' remaining claims in this suit are arbitrable")[10]; *Kingsbury Nav. Ltd. v. Koch Supply & Trading, LP*, No. 4:12-1851, 2013 WL 4519798, at *4 (S.D. Tex. Aug. 24, 2013) (same).[11]

## III.    In The Alternative, The Case Should Be Transferred To The Central District of California

In the unlikely event that the Court concludes that any of DeRosa-Grund's claims should be permitted to proceed in federal court, the parties' agreements contain forum-selection clauses under which the case should be transferred to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a).

The Supreme Court recently held that when considering whether to transfer a civil action under 28 U.S.C. § 1404(a), the analysis is decidedly tipped in favor of transfer where the parties have a contractual forum-selection clause:  "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine Const. Co., Inc.*, 134 S.Ct. at 581:

---

[10] *See* Ex. M.

[11] *See* Ex. N.

> The presence of a valid-forum selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways.  First, the plaintiff's choice of forum merits no weight. . . . Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. . . . Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public interest considerations.

*Id.* at 581-82 (citations omitted).  In short, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. . . .  In all but the most unusual cases, therefore, the 'interest of justice' is served by holding parties to their bargain."  *Id.* at 583.

Here, the parties' agreements contain unambiguous forum-selection clauses that expressly mandate that any claims not subject to arbitration may be heard *only* in the state and federal courts of Los Angeles County.  (O'Connor Decl., Ex. A ¶ 21, Ex B ¶ 25.)  The parties' forum-selection clauses are valid and binding, and as such, any remaining claims not subject to the parties' broad arbitration agreements must proceed, if at all, in the Central District of California, as required by the forum-selection clauses.

## CONCLUSION

WHEREFORE Defendants New Line Productions, Inc. and Warner Bros. Entertainment, Inc. respectfully request that this Court stay or dismiss this action in its entirety, or in the alternative, transfer venue to the United States District Court for the Central District of California.

Respectfully Submitted,

JACKSON WALKER L.L.P.

*/s/ Charles L. Babcock*

_____

Charles L. "Chip" Babcock
State Bar No. 01479500
S.D. ID # 10982
*Attorney-in-Charge*
cbabcock@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax
**ATTORNEYS FOR DEFENDANTS WARNER
BROS. ENTERTAINMENT, INC. and NEW
LINE PRODUCTIONS, INC**.

OF COUNSEL:

JACKSON WALKER L.L.P.

Courtney T. Carlson
State Bar No. 24065004
S.D. ID # 1115579
ccarlson@jw.com
1401 McKinney, Suite 1900
Houston, Texas  77010
(713) 752-4200
(713) 752-4221 – Fax

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2014, a copy of the foregoing document was filed electronically using the Court's Electronic Case Filing System.

*/s/ Charles L. Babcock*_____

Charles L. Babcock

22