UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVERGREEN MEDIA HOLDINGS, LLC, and TONY DEROSA-GRUND<br>   *Plaintiffs,*<br>v.<br>WARNER BROS. ENTERTAINMENT, INC. and NEW LINE PRODUCTIONS, INC.<br>   *Defendants* | § § § § § § § § § § § | Civil Action No. 4:14-cv-00793<br>(LEAD CASE) |
| EVERGREEN MEDIA HOLDINGS, LLC, TONY DEROSA-GRUND, and GERALD D. BRITTLE,<br>   Plaintiffs,<br>v.<br>LORRAINE WARREN, TONY SPERA, GRAYMALKIN MEDIA, LLC, NEW LINE PRODUCTIONS, INC., and WARNER BROS. ENTERTAINMENT, INC.,<br>   Defendants. | § § § § § § § § § § § § § | Civil Action No. 4:14-cv-01117 |

**PLAINTIFFS EVERGREEN MEDIA HOLDINGS, LLC AND TONY DEROSA-GRUND'S SUR-REPLY IN OPPOSITION TO DEFENDANTS WARNER BROS. ENTERTAINMENT, INC. AND NEW LINE PRODUCTIONS, INC.'S MOTION TO DISMISS OR STAY IN FAVOR OF ONGOING ARBITRATION; OR IN THE ALTERNATIVE TO TRANSFER VENUE**

Plaintiffs, Evergreen Media Holdings, LLC ("EMH") and Tony DeRosa-Grund ("Mr. DeRosa-Grund") (collectively, "Plaintiffs"), submit this Sur-Reply Memorandum in response to the Reply filed by Defendants on July 11, 2014 (Docket/Document #28).[1]

The issue presently before the Court is simple and straightforward: should the question of whether the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions in the Agreements between the parties are valid and enforceable be decided by the Court or by the arbitrator?

Defendants' Reply:

(i) is allegedly "supported" by the Declarations of Michael J. O'Connor (the "O'Connor Declaration") and Craig Alexander (the "Alexander Declaration") -- but such declarations are **specious**, containing numerous misrepresentations and falsehoods;

(ii) **misinterprets** the applicable law cited by Plaintiffs (and the applicable and relevant law generally) and inexplicably and untenably relies upon an unpublished decision that is not relevant and has no precedential value under California law; and

(iii) **lacks grounds** to legitimately dispute the issue presently before the Court and to make up for this lack of grounds **ignores** the actual issue and instead tries to convince the Court to jump over the issue at hand and simply "rule" in Defendants' favor and send the parties to arbitration (denying Mr. DeRosa-Grund his right to judicial review of the issue).

### A.   Defendants' Reply Relies Upon Specious Declarations.

As but one of the examples that exist of the specious nature of the O'Connor Declaration,

---

[1] During the status conference on June 27, 2014, the Court ordered Defendants' counsel to submit a draft Order that might be entered if the Court were to rule in Defendants' favor on their Motion to Dismiss. It is noted that Defendants' counsel has not submitted a draft Order. Plaintiffs' counsel, on the other hand, has asked for leave to file a draft order with their sur-reply, namely, an order staying the arbitration pending the outcome of these proceedings. Defendants' counsel seem likely to not have filed the draft Order as directed because, in doing so, they would have had to have admitted that: (i) there are numerous claims raised in these consolidated proceedings that are not subject to arbitration, e.g., Third Cause of Action (tortious interference with business relations) and Eighth Cause of Action (violation of §43(a) of the Lanham Act) of the Complaint in the Lead Case; and (ii) there are parties involved in these proceedings, e.g., Plaintiff Gerald Brittle and Defendants Lorraine Warren, Tony Spera and Graymalkin Media, LLC, who are **not** parties to the arbitration and can **never** be parties to the arbitration. In other words, regardless of the outcome of Defendants' Motion to Dismiss, the entirety of these proceedings cannot be dismissed. Thus, Defendants' statements on page 1 of Defendants' Reply are **utterly false**, e.g., statements that: "DeRosa-Grund will have the opportunity to present all of his legal and factual arguments ... in the parties' ongoing arbitration." and "[B]ecause *all* of DeRosa-Grund's claims are currently being arbitrated (or are clearly arbitrable), this case must be stayed or dismissed in its entirety." (italics original).

it misrepresents the status of the arbitration. Specifically, the O'Connor Declaration brings the September 3, 2013 Joint Report to the Court's attention (O'Connor Declaration ¶ 2) -- but it completely ignores the latest Joint Report that was filed on July 2, 2014.[2] While Defendants' drumbeat refrain that the arbitration proceeding has been pending for over a year is (irrelevant but) true,[3] what is also true is that the parties to the arbitration have been operating during that time period under the same **four page arbitration demand** filed June 18, 2013, namely, the Amended Demand for Arbitration which **asserts only four simple claims**.[4] It was only on May 30, 2014, i.e., nearly a year after the arbitration was commenced (and **a full month after Defendants filed their Motion to Dismiss**) that Defendants elected to file a Second Amended Demand for Arbitration. The Second Amended Demand for Arbitration is **a twenty-nine page document which belatedly presents both new and greatly embellished claims and raises in excess of fifty new issues**.[5] Significantly, in response to that July 2, 2014 Joint Report, the Hon. Richard C. Neal (Ret.) gave Plaintiffs leave to file a motion seeking additional discovery generally and specifically related to the new issues raised in the Second Amended Demand for

---

[2] Self-evidently, this was done for two reasons. First, as part of an attempt to hide from the Court the improper manner in which Defendants' counsel conducted themselves in connection with such filing. Defendants' counsel's conduct is reflected by the Cover Letter and July 2, 2014 Joint Report which were filed by Plaintiffs' counsel, copies of which documents are attached to the Declaration of Michael R. Patrick ("Patrick Decl."), dated July 14, 2014 (submitted herewith) as Exhibit A (without copies of the exhibits thereto)). Second, to hide from the Court what the July 2, 2014 Joint Report made clear, namely, that additional discovery **is** required in connection with the arbitration proceeding if it is not stayed and goes forward as a result of the Second Amended Demand for Arbitration filed by Defendants on May 30, 2014.

[3] In the same manner, Defendants' drumbeat refrain that the facts regarding the parties' relationship - as recited in both the arbitration and this litigation - are the "same" (frankly - how could they not be?) is (irrelevant but) true.

[4] A copy of the four page Amended Demand for Arbitration that the parties have been operating under since July 18, 2013 is attached to the Patrick Declaration as Exhibit B. The "demand" is set forth in the pages labeled pages 2 through 5.

[5] The extent to which New Line and Warner Bros. sought to "restart" the arbitration on May 30, 2014 with their new Second Amended Demand for Arbitration is best illustrated by the copy of the Second Amended Demand for Arbitration Plaintiffs' counsel submitted to the arbitrator with "pink highlighting" to show all of the new issues. A copy of such "pink highlighted" copy of the Second Amended Demand for Arbitration is attached to the Patrick Declaration as Exhibit C. That Defendants advised this Court in their Motion and even now continue to advise this Court - to wit, on page 2 of their Reply - that "The arbitration would have already been completed had DeRosa-Grund not been hospitalized in January 2014" is **utterly false**. They did not file their Second Amended Demand for Arbitration until May 30, 2014!

Arbitration and of Warner Bros. The O'Connor Declaration falsely fails to acknowledge these crucial facts.[6]

Defendants' Reply also cites to the O'Connor Declaration for the proposition that Plaintiffs have "actively and zealously" participated in the arbitration. Plaintiffs have participated, but all the while they have maintained that the arbitration proceeding is improper and have objected to the jurisdiction of the Arbitrator as well as to the proceedings in general.[7]

The Court needs to be clearly aware of the following timeline that irrefutably buttresses Plaintiffs' explanation of the events as they have unfolded between the parties, illustrates the absolute irrelevancy of Defendants' drumbeat refrains and explains why Plaintiffs have not heretofore raised the issue presently before the Court but are legally entitled to do so now:

June 18, 2013: Defendants filed their Amended Arbitration Demand asserting the

---

[6] See the July 3, 2014 Order attached to the O'Connor Declaration as Exhibit I. It is disingenuous of Defendants to argue on page 2 of the Reply that: "the arbitration's discovery deadline has passed" - in the same manner that it is disingenuous of Defendants to seek to argue that because a certain number of filings have been made by Plaintiffs in the arbitration (18 by Defendants' count), or a certain number of hearings or conferences have occurred (8 by Defendants' count) - those facts alone should preclude Plaintiffs from the relief now sought from this Court. Defendants' arguments beg the question - if the arbitration is so far advanced - i.e., after the 18 filings and 8 hearings or conferences - why were Defendants permitted to file a Second Amended Demand for Arbitration on May 30, 2014 and to raise over 50 new issues in the arbitration? The answer is simple - because the arbitration is NOT as far advanced as Defendants would like this Court to believe.

[7] Plaintiffs citation to *Fleck v. S. Pac. Co.*, 338 F.2d 655 (9th Cir. 1964) is inapplicable because, in that case, the claimant "waited until after an **unfavorable decision** had been handed down before challenging the authority of the arbitrators" (Reply p 3)(emphasis added). Plaintiffs have not waited and there has been no unfavorable decision by the Arbitrator (the denial of interim relief was NOT the type of "unfavorable decision" that the Court based its ruling on in *Fleck*). Rather, the record is clear that to the extent that Plaintiffs have participated in the arbitration to date, they did so: (i) because they had been advised that, notwithstanding the fact that their objections were made and preserved, failure to participate could result in a default judgment (this position was most recently reiterated by Justice Neal in his order on April 18, 2014, when he informed Mr. DeRosa-Grund - who was at that time acting without counsel - that "Mr. DeRosa-Grund's failure to appear and participate in the arbitration, either in person or through new counsel, will expose him to the risk of an adverse decision based solely on evidence submitted by his adversary.") (Patrick Decl. Exh. C); and (ii) most importantly, because until May 30, 2014, Plaintiffs thought they were defending against merely the four simple purported breaches in the Amended Demand for Arbitration (**which Plaintiffs knew no longer existed**). The Reply also references (without support in any declaration) the document exchange that has occurred between the parties in the hopes that somehow reciting the number of documents exchanged will confuse the Court into thinking that the arbitration is further along than it is. That untenable argument is undercut by the simple fact that NONE of the documents of Mr. Alexander - the sole witness being put forth by Defendants - have been produced. Further, at Defendants' insistence, those documents will not be produced for more than two months and Mr. Alexander's deposition will not take place until the end of September. (Patrick Decl. ¶ 6).

|  |  |
|---|---|
|  | aforementioned four simple claims (Patrick Decl., Exh. B (the Amended Demand for Arbitration) (setting forth the following four narrow issues (none of which Plaintiffs submit were ever valid and that certainly do not exist today)): (i) Plaintiffs' allegedly improper trademark registrations; (ii) Plaintiffs' allegedly improper MPAA registrations; (iii) Plaintiffs' allegedly improper deal with Lionsgate to develop a television series under "THE CONJURING" brand name; and (iv) Plaintiffs' allegedly improper deal with Lionsgate to develop a television series with content based upon "The Conjuring" theatrical motion picture[8]; |
| March 28, 2014: | Plaintiffs filed their lawsuit against New Line and Warner Bros. (the "Lead Case") seeking to address matters outside of the arbitration, e.g., causes of action against Warner Bros.; |
| April 25, 2014: | Defendants moved to dismiss the Lead Case, i.e., attempting to force not only their original four simple claims into arbitration, but now also all of Plaintiffs' claims from the Lead Case, including the claims against Warner Bros., as well as all of Defendants' new claims and new issues which they would subsequently include in their new demand, i.e., the Second Amended Demand for Arbitration;[9] and |
| May 30, 2014: | Defendants filed their new demand, i.e., the Second Amended Demand for Arbitration, raising a multitude of new and embellished claims and over fifty new issues. |

---

[8] As Defendants have known for over a year, and as was recently reconfirmed by Lionsgate personnel, neither issue iii nor issue iv was ever valid. (Patrick Decl. Exh. E (declarations of Lionsgate personnel).

[9] During the July 3, 2014 conference with Justice Neal - the Court will be surprised to learn that counsel for Defendants argued that - notwithstanding the relief sought in the arbitration on behalf of Warner Bros., Warner Bros. should **NOT** be subjected to discovery in the arbitration because Warner Bros. is not in contractual privity with Plaintiffs and is not a party to the Agreements at issue. (Patrick Decl. ¶¶ 8-9). This statement by Defendants' counsel in the arbitration directly contravenes the representations that have been made to this Court. Such two-faced arguing in the arbitration and before this Court must not be allowed. Regrettably, this is Defendants' *modus operandi*, as evidenced by a recent filing by Defendants in a separate action, *Gerritsen v. Warner Bros. Entertainment, Inc.*, wherein Defendants represented that Warner Bros. and New Line are separate entities. See Defendants' Notice of Motion to Dismiss Plaintiff's Complaint filed in *Gerritsen v. Warner Bros. Entertainment, Inc.*, Case No. CV14-3305 pending in the U.S. District Court for the Central District of California. ("When New Line became an indirect subsidiary of Warner Bros., New Line *kept all of the IP rights and contracts* it acquired prior to 2010") (Patrick, Decl. Exh. F) (emphasis in original). Defendants' representations in this case are clearly contrary to the representations advanced in *Gerritsen v. Warner Bros. Entertainment, Inc.*, e.g., New Line and Warner Bros. have represented to this Court that they are effectively **one and the same** entity while they told the *Gerritsen* court that they are **not one and the same**. Defendants' representations in this case are also clearly contrary to representations made to Justice Neal in the arbitration where Defendants' have insisted that that they are **separate**. (Patrick Decl. ¶¶8-9). In sum, New Line and Warner Bros. are willing to argue disingenuously contrary positions in proceedings in which they are involved whenever they feel to do so is advantageous to their "ends."

As but one of the examples that exist of the specious nature of the Alexander Declaration, it misrepresents the scope of the parties' negotiations. Specifically, the Alexander Declaration tries to obfuscate the fact that **the arbitration provisions, governing law/dispute resolution provisions and injunctive relief provisions were NOT negotiable (and, indeed, were NEVER negotiated).**[10] Indeed, the very exhibits Plaintiffs submitted to this Court clearly evidence that while some provisions were open to discussion and/or negotiation, others were absolutely not. Most notably, the arbitration provisions, governing law/dispute resolution provisions and injunctive relief provisions were not subject to discussion or negotiation and, indeed, were **never** changed. Notably, not once in the Alexander Declaration does he discuss, or even refer to, any negotiation of the arbitration provisions, the governing law/dispute resolution provisions or the injunctive relief provisions - because there was NONE.[11] By way of contrast, both the Gatti Declaration and the McGriff Declaration expressly state that attempts were made to negotiate those provisions on behalf of Plaintiffs and that all such efforts were expressly and unequivocally rejected out-of-hand by Defendants. (See Declaration of John Gatti [Docket/Document # 15-2] ¶16 ("Gatti Decl.") ("New Line absolutely refused to negotiate terms and conditions related to judicial remedies and arbitration in the Agreements....[New Line] represented to me that New Line would not negotiate or otherwise remove, alter or change

---

[10] The Alexander Declaration submits a deluge of over five hundred pages to the Court that merely prove the irrelevant fact that New Line was willing to negotiate **other clauses** besides the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions. Evidence of a willingness to negotiate - no matter how extensive - other clauses besides the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions is **not** evidence that the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions are **not** procedurally unconscionable.

[11] It is rather ironic that Defendants would have the temerity to include the following quote in the Reply: "Tony ... is fine with the pay or play concept ..." as somehow evidencing Mr. DeRosa-Grund's bargaining strength (Reply, page 6). The Court will be surprised to learn that, despite Mr. DeRosa-Grund's insistence upon this clause, something now admitted by New Line in the Reply, New Line is incongruously claiming that no such "pay or play" right is included in the Producer Loanout Agreement and so New Line has **neither** engaged Mr. DeRosa-Grund as a producer **nor** is he being paid producer fees in connection with the Annabelle theatrical motion picture and/or the next sequel. (Patrick Decl. ¶10).

arbitration provisions in its agreements....EMH and Mr. DeRosa-Grund had no bargaining power or choice but to accept New Line's arbitration provision if it were to conclude its deal with New Line."); and Declaration of David C. McGriff [Docket/Document #15-4] ¶5 ("McGriff Decl.") (referring to the Agreements, Mr. McGriff stated: "I was told by New Line's representatives including Mr. Alexander and [Allison] Strina that the arbitration provision as drafted was New Line's accepted provision and that it was New Line's corporate policy that this arbitration provision had to be accepted as presented by New Line without any modifications or revisions by EMH and Mr. DeRosa-Grund. As a result, my requests to strike and/or modify the provisions were rejected and EMH was required to accept the arbitration provision by New Line as part of any potential deal.")

### B. Defendants' Reply Is Replete With Unavailing Legal Arguments.

Due to the fact that *Ajamian v. CantorCO2e* is fatal to their position, Defendants cite *Sheen v. Lorre, et al*, 2011 WL 2349074 No. SC111794 (L.A. Sup. Ct. June 15, 2011). However, *Sheen* is merely a trial ruling of the Superior Court in California and is not published or precedential. Under California law, unpublished decisions cannot be cited or relied upon except under limited circumstances, none of which are present here. *Santa Ana Hosp. Med. Ctr. v. Belshe*, 56 Cal. App. 4th 819, 831, 65 Cal. Rptr. 2d 754, 761 (1997) (noting that "a written trial court ruling has no precedential value") (citing 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 763, pp. 730-731). Thus, *Sheen* is not a published decision, may not be cited to or relied upon and holds no precedential value. Conversely, *Ajamian*, is a published decision, may be cited and relied upon and is valid precedent under California law.[12]

---

[12] Moreover, *Sheen* is contrary to published, citable decisions -- such as *Ajamian*. Here, as in *Ajamian*, there is no express language permitting the Arbitrator to adjudicate issues of arbitrability and enforceability. Thus, there is no "clear and unmistakable" delegation of the issue to the Arbitrator and this Court must first determine whether the

Moreover, Defendants cite a number of other cases, e.g., *Pinnacle Museum Tower Assn. v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012) and *Morris v. Redwood Empire Bankcorp.*, 128 Cal. App. 4th 1305, 1319-20 (2005), to purportedly demonstrate that the provisions at issue are not unconscionable. However, those cases simply are either not instructive or are not at all helpful to Defendants' position.[13]

### C. Plaintiffs' Position on the Substantive Issue is Correct.

The bottom line is that Plaintiffs have shown that the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions are null, void and/or unenforceable as a matter law because they are adhesive, illusory, lack mutuality and/or

---

arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions are valid and enforceable. Moreover, the fact that the arbitration provisions reference the JAMS rules is not relevant insofar as the reference to JAMS is merely an indication that such arbitration would proceed to JAMS (and not some other forum) -- by no means are the JAMS rules "incorporated" into the arbitration provisions, let alone is there any clear or unmistakable indication that such a reference to the JAMS rules would suddenly place issues of enforceability or validity in front of the Arbitrator and not the court.

[13] For example, Defendants untenably rely upon *Pinnacle* to demonstrate that "oppression" could not possibly be present because the parties negotiated **some** of the provisions in the Agreements, i.e., Defendants claim this fact proves there was equality of bargaining power and meaningful negotiation (which, of course, there absolutely was not). This argument ignores the fact that *Pinnacle* does not stand for or even address the situation here, namely, where the parties negotiated **some** of the provisions but where **Defendants refused to negotiate the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions**. *Pinnacle* simply does not apply to this case. Defendants cannot overcome the fact that they refused to negotiate the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions by claiming that others provisions of the Agreements were negotiated (i.e., they cannot overcome the lack of meaningful negotiation and unequal bargaining power as to those provisions). Additionally, *Pinnacle* is inapplicable to this case because: (i) the court was confronted with unique circumstances relating to condominiums and the issues were intertwined with specific California laws which are not at issue here; and (ii) with respect to the issue of mutuality, the court held that the provision at issue did not lack mutuality because both parties were required to arbitrate the same issues (namely, in that case, construction-related claims) -- that is not the case here because Defendants may choose to either arbitrate injunctive relief issues or go to court to litigate injunctive relief issues whereas Plaintiffs cannot go to court for any reason pursuant to the Agreements. Likewise, the *Morris* case is not applicable or helpful. Defendants cite the *Morris* case for the proposition that Plaintiffs had "reasonable market alternatives" to dealing with New Line. This is a ludicrous statement for two principal reasons: (i) *Morris* concerned obtaining merchant credit card services which are widely available from numerous competitors and, therefore, *Morris* is entirely inapplicable to this case; and (ii) as set forth in Plaintiffs' Opposition, if Plaintiffs had not executed the Agreements "The Conjuring" theatrical motion picture would likely never have been made. (E.g., Opposition p. 12) ("Indeed, New Line knew that Mr. DeRosa-Grund and EMH needed to conclude the long form agreement and move forward with the project because of their financially precarious position having just emerged from bankruptcy and because they had no alternative in light of the executed Deal Memo.")

otherwise unconscionable.[14] California "courts will refuse to enforce arbitration provisions that are unconscionable or contrary to public policy." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006)(quoting *Abramson . Juniper Networks, Inc.*, 115 Cal.App. 4th 638, 651 (2004). Procedural unconscionability focuses on "oppression or surprise" and "the manner in which the disputed clause is presented to the party in the weaker bargaining position." *Id.* at 1282 (internal quotations omitted).[15] "When the weaker party is presented the clause and told to "take it or leave it" without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present." *Id.* at 1282 "An arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one-sided' results." *Id.* at 1280 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83 (2000)).

Plaintiffs submit that for the reasons explained in previously filed papers (e.g.,

---

[14] Defendants erroneously claim that "DeRosa-Grund does not dispute that the relevant arbitration provisions contained within the parties' Agreements are broad, rather than narrow." (Reply p. 1). Plaintiffs unequivocally stated that the arbitration provisions contained in the Agreements are "narrow". (See Opposition [Docket/Document # 15] p. 21). The reason this question is a "red herring" is because the issue of whether the provisions are broad or narrow is irrelevant insofar as the arbitration provisions do not at all reference "enforceability", "validity" or "arbitrability" such that those issues were not "clearly and unmistakably" delegated to the arbitrator and must be determined by this Court in the first instance. Mere references to "scope or applicability" in the arbitration provisions, without more, are vastly different than references to "enforceability", "validity" or "arbitrability". Defendants are trying to revise the arbitration provisions so as to include issues that the plain language of the provisions simply do not provide.

[15] Note that Defendants do not correctly cite to the applicable standards/test and, in fact, Defendants deliberately misrepresent them to the Court in critical ways. For example, with respect to "procedural unconscionability", Defendants claim that the Court looks at "'surprise' **and** 'oppression'". (Reply p. 5) (emphasis added). That is not true. This Court is required to look at either "surprise" **or** "oppression". *Nagrampa*, 469 F.3d at 1280. Moreover, Defendants go on to falsely claim that the "Agreements are not form contracts" and that the Agreements were not imposed on a "take it or leave it basis." (Reply p. 5). First, there is no question that the arbitration provisions, governing law/dispute resolution and injunctive relief provisions were "form" or "standard" provisions that New Line represented it uses in virtually every contract -- indeed, this is admitted by Defendants in the Reply and has already been established by Plaintiffs. (Reply p. 7 (referring to the arbitrations provisions as "standard"); see Gatti Decl. ¶16 ("New Line] represented to me that New Line would not negotiate or otherwise remove, alter or change arbitration provisions in its agreements...."); McGriff Decl. ¶5 ("I was told by New Line's representatives including Mr. Alexander and [Allison] Strina that the arbitration provision as drafted was New Line's accepted provision and that it was New Line's corporate policy that this arbitration provision had to be accepted as presented by New Line without any modifications or revisions by EMH and Mr. DeRosa-Grund.") Thus, the arbitration provisions, governing law/dispute resolution and injunctive relief provisions are "form" provisions. Second, Plaintiffs have established that the arbitration provisions, governing law/dispute resolution and injunctive relief provisions were imposed on a "take it or leave it basis". (See, e.g., id.)

8

Docket/Document #15), the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions are procedurally and substantively unconscionable.[16]

### D. The "Deal Memo" Approved By The Texas Bankruptcy Court Is Absolutely Relevant.

The "Deal Memo" negotiated by the parties and approved by the Texas Bankruptcy Court is absolutely relevant to this case. Not surprisingly, Defendants are desperate to avoid it and to minimize its impact in this case. In particular, Defendants claim that the Deal Memo was not "approved" by the Texas Bankruptcy Court. However, as set forth in Plaintiffs' Opposition (e.g., pp. 8-12), and the declarations accompanying the Opposition (Declaration of Nathan Hensley [Docket/Document No. 15-3], e.g., ¶¶4-5, 9-10, 14, 16, 19 ("Judge Steen approved the Deal Memo and the proposed order, without any change on January 27, 2010."), Exh. A, Exh. B; Gatti Decl. ¶¶ 10-11 ("The Deal Memo was approved by Judge Steen on January 27, 2010."), Exh. A.) there is no question that it was "approved" by the Texas Bankruptcy Court and that the terms of

---

[16] It bears noting that Defendants claim that Plaintiffs "cannot invalidate the Arbitration Provisions by challenging unrelated provisions in the Agreement." (Reply p. 8). Defendants' argument in this regard is that the "injunctive relief" provisions are entirely unrelated to the "arbitration provisions". That argument is absurd. First, it is hornbook law that provisions of a contract are not read in isolation. Rather, a contract is read as a whole. *See Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 1265, 833 P.2d 545, 552 (1992) ("*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract.*") (italics in original); see also Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). Second, the injunctive relief provisions undoubtedly affect the arbitration provisions insofar as New Line is given the purported right to seek injunctive relief (which it could do in Court pursuant to the Agreement or at arbitration) and equitable relief whereas Plaintiffs are stripped of all such rights and, according to Defendants, could never bring **any** action in a court. The absurdity of Defendants' position is underscored by the fact that Defendants attempt to offer a "reasonable business justification for barring DeRosa-Grund from seeking injunctive relief such that the term is conscionable." (Reply p. 8). This purported "business justification" is ludicrous insofar as injunctive relief can be either prohibitive or mandatory or both -- in other words, the right to injunctive relief does not mean that "an entire motion picture" will be automatically brought "to a halt". In fact, in this case, injunctive relief could be, among other things, that Defendants would be required to pay all the monies owed to Plaintiffs pending the outcome of the proceedings or to afford Plaintiffs the "credits" they are due. Moreover, the Courts are quite capable of weighing and balancing equities and factors when it comes to requests for injunctive relief such that the "parade of horribles" imagined by Defendants would never occur.

the Deal Memo were, in fact, negotiated between the parties **and** the U.S. Trustee assigned to the Bankruptcy case. This issue has already been credibly established insofar as, in connection with Plaintiffs' Opposition, Plaintiffs submitted declarations of Nathan Hensley (Mr. DeRosa-Grund's bankruptcy counsel in Texas), John Gatti (Plaintiffs' entertainment counsel) and Mr. DeRosa-Grund, all of which support Plaintiffs' argument. Quite frankly, Defendants' entire argument represents little more than fictional statements by two people who were **not** involved in the Bankruptcy proceeding, namely, Defendants' counsel in this case and Mr. O'Connor, i.e., neither Mr. Babcock nor Mr. O'Connor have any valid, good faith basis upon which to make any statement about the Deal Memo and/or the Texas Bankruptcy Court proceedings insofar as they were not involved.

The bottom line is that, after entering into the Deal Memo as part of the Texas Bankruptcy proceedings, the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions were procured by fraud, deceit and misrepresentation.

## CONCLUSION

Plaintiffs submit that, for the reasons advanced in previous filings and herein, an order should be entered staying the arbitration, pending a full hearing on the question of whether the arbitration provisions, the governing law/dispute resolution provisions and the injunctive relief provisions in the Agreements between the parties are valid and enforceable.

Respectfully submitted,

By: /s/ Sanford L. Dow
    Sanford L. Dow
    S.D. Texas No. 17162
    Texas Bar No. 00787392
    Nine Greenway Plaza, Suite 500
    Houston, Texas 77046
    (713) 526-3700/FAX (713) 526-3750
    dow@dowgolub.com

ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:
DOW GOLUB REMELS & BEVERLY, LLP
Stephanie A. Hamm
S.D. Texas No. 108779
Texas Bar No. 24069841
Nine Greenway Plaza, Suite 500
Houston, Texas 77046
(713) 526-3700/FAX (713) 526-3750
sahamm@dowgolub.com

GRIMES LLC
Charles W. Grimes - Connecticut Juris No. 304368
(admitted pro hac vice to S.D. Texas)
grimes@gandb.com
Michael R. Patrick - Connecticut Juris. No. 423632
(admitted pro hac vice to S.D. Texas)
patrick@gandb.com
488 Main Avenue
Norwalk, Connecticut 06851
Tel: (203) 849-8300/FAX: (203) 849-9300

## CERTIFICATE OF SERVICE

On July 14, 2014, I electronically submitted the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure (5)(b)(2):

/s/ Stephanie A. Hamm
Stephanie A. Hamm