UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVERGREEN MEDIA HOLDINGS, LLC, and | § | |
| TONY DEROSA-GRUND | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 4:14-cv-00793 |
| | § | (SENIOR CASE) |
| WARNER BROS. ENTERTAINMENT, INC. and | § | |
| NEW LINE PRODUCTIONS, INC. | § | |
| *Defendants* | § | |

| | | |
|---|---|---|
| EVERGREEN MEDIA HOLDINGS, LLC, TONY | § | |
| DEROSA-GRUND, and GERALD D. BRITTLE, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-cv-01117 |
| | § | (JUNIOR CASE) |
| LORRAINE WARREN, TONY SPERA, | § | |
| GRAYMALKIN MEDIA, LLC, NEW LINE | § | |
| PRODUCTIONS, INC., and WARNER BROS. | § | |
| ENTERTAINMENT, INC., | § | |
| Defendants. | § | |

**MOTION FOR LEAVE TO AMEND COMPLAINT
IN SENIOR CASE (CIVIL ACTION NO. 4:14-CV-00793)**

Based upon (i) admissions contained in papers filed by Defendants Warner Bros.

Entertainment, Inc. ("Warner Bros.") and New Line Productions, Inc. ("New Line")

(collectively, "Defendants"); and (ii) disclosures contained in documents produced by

Defendants, Plaintiffs Evergreen Media Holdings, LLC ("EMH") and Tony DeRosa-Grund

("Mr. DeRosa-Grund") (collectively, "Plaintiffs") hereby move for leave to amend their

complaint in Civil Action No. 4:14-cv-00793 (the "Complaint")(the "Senior Case") to:

(1)     incorporate into the Complaint facts, allegations, and claims that were originally
advanced on behalf of Plaintiffs in the complaint filed in the now dismissed Civil
Action No. 4:14-cv-01117 (the "Junior Case");[1] and

---

[1] The complaint in the Junior Case was filed at a time when New Line and Warner Bros. denied that EMH and Mr.
DeRosa-Grund were owed anything under the parties' Agreements - leaving Plaintiffs and Gerald D. Brittle ("Mr.
Brittle") with the reasonable conclusion that a rationale that New Line and Warner Bros. had adopted for such denial
was that they had obtained the necessary underlying rights for such productions from another source, namely, from

1

(2)     address spurious misrepresentations and disparaging false statements made publicly by Defendants.

A copy of Plaintiffs' proposed First Amended Complaint is attached to the Declaration of Michael R. Patrick dated July 25, 2014 ("Patrick Decl.") (attached as Exhibit 1) as Exhibit A.[2]

As an aside, Plaintiffs full well realize that Defendants will likely try to turn Plaintiffs' good faith action in dismissing the Junior Case against them, to wit, that they will try to claim that the dismissal of the Junior Case (and resultant removal of Warren, Spera and Graymalkin as parties to the disputes before this Court) is justification for dismissal of the remaining counts in the Senior Case in favor of arbitration.[3]

Plaintiffs implore the Court not to countenance any attempt by Defendants to "twist" Plaintiffs' good faith action for their own benefit.  Plaintiffs submit that, for the reasons stated in their papers, even without the now dismissed Defendants, dismissal of the Senior Case in favor of the arbitration would not be proper.

## I.     Nature and Stage of Proceedings

Several matters are presently pending in the Senior Case and in the Junior Case, namely (listed in the order in which they were filed):

---

*The Demonologist* book authored by Mr. Brittle, under an illegitimate arrangement which they had struck with Lorraine Warren ("Ms. Warren") in violation of a Collaboration Agreement between Mr. Brittle and Ms. Warren. Now that New Line and Warner Bros. have admitted in their papers that: (i) such productions are based upon the Case Files and not *The Demonologist*; and (ii) that there was no agreement between either New Line and Warner Bros. and Ms. Warren in violation of the Collaboration Agreement, Plaintiffs and Mr. Brittle are in good faith voluntarily dismissing the Junior Case as of right.

[2] The proposed First Amended Complaint contains four new causes of action (the third, eighth, eleventh and twelfth causes of action) in addition to amendments to the originally filed causes of action and underlying facts and allegations in support thereof.

[3] After all - Defendants tried to twist the fact that Plaintiffs engaged counsel from outside the state - in their words, "Connecticut Yankees" - against them, *i.e.*, Defendants incredulously tried to imply that the Court should ignore the obvious fact that they engaged their lead counsel because he is a world renowned specialist in these types of matters and instead see such engagement, in and of itself, as a reason to diminish Plaintiffs' claims in the eyes of the Court. For the record, although not sure why Defendants think it matters, Plaintiffs' lead counsel grew up in middle America - where he was taught the principle of always doing the honorable thing in good faith (which is why the Junior Case was voluntarily dismissed) - and he now lives in Naples, Florida.

(1)     New Line and Warner Bros.' Motion to Stay, Dismiss, or Transfer (in the Senior Case) (the "Motion to Dismiss");

(2)     Graymalkin Media, LLC's ("Graymalkin") Motion to Dismiss or Transfer (in the Junior Case);

(3)     Plaintiffs and Mr. Brittle's Motion to Continue (in the Junior Case);

(4)     Lorraine Warren ("Ms. Warren") and Tony Spera's ("Mr. Spera") Motion to Dismiss (in the Junior Case);

(5)     New Line and Warner Bros.' Motion for a Limited Protective Order (in the Junior Case);

(6)     New Line and Warner Bros.' Motion to Dismiss (in the Junior Case);

(7)     Defendants' "proposed" order (in both the Senior Case and the Junior Case); and

(8)     the instant motion.

Other than the Motion to Continue (Item # 3 in the foregoing list), none of the other motions have been fully briefed.[4]

Prior to filing the instant Motion, Plaintiffs and Mr. Brittle, acting in good faith, filed a Notice of Dismissal in the Junior Action, dismissing without prejudice as of right the claims of Plaintiffs and Mr. Brittle.[5]   As a result, not only is the Junior Case dismissed, but also the Motions listed above as Items #2, #3, #4, #5 and #6 are moot, as is Defendants' "proposed" order (Item #7).

All that remains for the Court to decide in the surviving Senior Case are the Motions listed above as Items #1 and the instant Motion (Item #8).

---

[4] In a previous motion, Defendants erroneously claimed that their Motion to Dismiss (Item #1) had been "fully briefed".  (See Docket/Document No. 33, p. 4).  That Motion had not been fully briefed at that time in view of the fact that Plaintiffs filed their Motion for Leave to File a Sur-Reply.  On July 24, 2014, Plaintiffs' Motion for Leave to File a Sur-Reply was granted. [Docket/Document No. 38].  However, the Motion to Dismiss still has not been fully briefed because Defendants filed an untimely "proposed" order with respect to the Motion to Dismiss on July 18, 2014 [Docket/Document Nos. 36 and 36-1].  Setting aside the fact that this Court ordered Defendants' to file their proposed order by July 11, 2014 (in conjunction with another filing) and Defendants simply ignored that order, Plaintiffs' response and/or opposition to the "proposed" order is not due until August 8, 2014.
[5] Plaintiffs and Mr. Brittle have filed a new action in the U.S. District Court for the District of Connecticut asserting their claims against Ms. Warren, Mr. Spera and Graymalkin.

## II.      Summary of Relevant Facts

Plaintiffs' motion for leave to amend their Complaint is proper insofar as amendments are freely and liberally granted at this stage in the proceedings and the motion is brought for good cause, namely, because: (i) Defendants have made certain admissions in papers they have filed which warrant amendment of Plaintiffs' Complaint; (ii) Defendants have produced certain documents containing disclosures which warrant amendment of Plaintiffs' Complaint; (iii) Plaintiffs (and Mr. Brittle) have in good faith voluntarily dismissed the Junior Case which warrants amendment of Plaintiffs' Complaint in the Senior Case to insert therein facts, allegations and claims previously advanced on behalf of Plaintiffs in the Junior Case that remain viable after dismissal of the Junior Case; and (iv) Plaintiffs are entitled to address the spurious, extremely damaging, misrepresentations and disparaging false statements that have been made by Defendants in papers they have filed in these proceedings and that have been published to the public at large.  Specifically:

(i)  In a declaration proffered by counsel for Defendants, namely, the sworn declaration of Ms. Warren filed by Defendants' counsel on July 17, 2014, she averred that: "My personal and business files are located in Connecticut." (Docket/Document No. 32-1 (Ms. Warren's sworn declaration)). The significance of this sworn statement cannot be overstated.  Ms. Warren's sworn statement directly controverts and underscores the untenable nature of the claim repeatedly asserted by New Line and Warner Bros. that Mr. DeRosa-Grund is guilty of breaching the agreements between: (i) EMH and Mr. DeRosa-Grund; and (ii) New Line; namely, the Option Quitclaim Agreement and the Producer Loanout Agreement (collectively the "Agreements") because **he** has failed to deliver the physical Case Files of Ms. Warren to New Line and Warner Bros. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 57, 72, 84)).

Even assuming, arguendo, that Mr. DeRosa-Grund was contractually required to turn over the actual physical Case Files to New Line -- which he is not -- Ms. Warren's declaration establishes: (i) that Ms. Warren is in possession of all of the physical Case Files - not EMH or Mr. DeRosa-Grund; and (ii) that this is a fact that Defendants have had knowledge of for some time, but nevertheless have continued (even now) to advance their specious claim of breach as an untenable justification for withholding monies -- now over **$2,000,000** -- which Defendants admit they owe to Plaintiffs. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 57, 72, 84)).   Plaintiffs are entitled to amend their Complaint to include allegations concerning Ms. Warren's averments, proffered by Defendants' counsel, and Defendants' ongoing improper conduct in refusing to pay Plaintiffs monies that Defendants admit are otherwise due to Plaintiffs.

(ii) In documents produced by Defendants it was revealed that the terms of the agreement which New Line entered into with Ms. Warren (the "Lorraine Warren Direct Agreement") were materially and substantively different than the terms that Defendants represented to EMH and Mr. DeRosa-Grund were being included in the Lorraine Warren Direct Agreement. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 34-35, 76, 84, 88-94, 131-133));[6]  Plaintiffs are entitled to amend their Complaint to include allegations concerning Defendants' conduct, e.g.,

---

[6] Indeed such documents evidence that New Line deliberately misrepresented the terms of their direct Agreement with Loraine Warren in an unscrupulous and fraudulent attempt to hide from EMH and Mr. DeRosa-Grund the fact that through the artifice of the Lorraine Warren Direct Agreement, New Line was seeking to steal from EMH and Mr. DeRosa-Grund rights that had previously been granted to them by Ms. Warren.  Specifically, New Line falsely represented to EMH and Mr. DeRosa-Grund that the Lorraine Warren Direct Agreement would not effect, alter or change **any** of EMH or Mr. DeRosa-Grund's rights.  (Declaration of Tony DeRosa-Grund ("DeRosa-Grund Decl.") (attached as Exhibit 2) at Exhibit A (email from New Line's Senior Vice-President Craig Alexander to Mr. DeRosa-Grund)).  And yet - that is exactly what the Lorraine Warren Direct Agreement did!  The best and most compelling evidence that New Line's representation was false was the lengths to which New Line went to cover up their actions and to hide the Lorraine Warren Direct Agreement from Plaintiffs. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 34-35, 76, 84, 89-94, 131-133))

the fact that New Line breached the Agreements by attempting to circumvent the Agreements and gain greater rights through a "direct deal" with Ms. Warren.

(iii) Plaintiffs have in good faith voluntarily dismissed their claims against New Line and Warner Bros. in the Junior Case.  Plaintiffs are entitled to amend their Complaint to incorporate into their Complaint facts, allegations and claims that were originally contained in the now dismissed Junior Case that still remain viable.

(iv) Finally, in papers which Defendants have filed in these proceedings and have published to the public at large, Defendants have made spurious misrepresentations and disparaging false statements regarding Plaintiffs which have damaged and are continuing to damage Plaintiffs.   Plaintiffs are entitled to amend their Complaint to incorporate facts, allegations and claims that address such misrepresentations and disparaging false statements. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 73, 141-148)).

### III.    Issue to be Ruled Upon

> Should this Court grant Plaintiffs' motion for leave to amend the Complaint in the Senior Case pursuant to Rule 15(a) of the Federal Rules of Civil Procedure which requires that such leave "shall be freely given when justice so requires"?

### IV.    Oral Argument

Plaintiffs believe that the issue presented by this motion is simple and straightforward and that, particularly in view of the judicial policy of freely granting motions such as this, oral argument is unnecessary.

### V.    Argument

Federal Rule of Civil Procedure 15(a) demands that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 607-08 (5th Cir. 1998).  Leave to amend is granted liberally as there is a distinct "bias in

favor of granting leave to amend" embodied in Rule 15(a). *Goldstein v. MCI WorldCom*, 340 F.3d 238 254 (5th Cir. 2003). A district court "must possess a 'substantial reason' to deny a request for leave to amend." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). The Fifth Circuit evaluates the following factors to determine "whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Id.* If these factors are not present, "the leave sought should be 'freely given.'" *Id.* (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

In this situation, leave must be freely given and leave to amend Plaintiffs' Complaint must be granted because none of the foregoing five factors warrant any other conclusion.

There has been no "delay", "bad faith or dilatory motive" in bringing this motion. To the contrary, Plaintiffs have exercised exemplary good faith in dismissing the Junior Case and seeking to instead introduce into the Senior Case via this motion facts, allegations and their claims against New Line and Warner Bros from the Junior Case, and in seeking to introduce, prior to the filing of an answer by Defendants or the propounding of any discovery, facts, allegations and claims based upon: (i) admissions contained in papers filed by Defendants; (ii) disclosures contained in documents produced by Defendants; and (iii) spurious misrepresentations and disparaging false statements made by Defendants.

The proceedings herein are still in their infancy. Indeed, Defendants have not yet answered the pleadings and discovery has not yet commenced.

The foregoing reasons belie even any "suggestion" of undue prejudice insofar as the proposed amendment will provide Defendants with sufficient notice of the claims and provide them ample opportunity to respond and defend with respect thereto.

Finally, the amendment is not futile -- it is meritorious in that it arises from: (i) admissions proffered by Defendants; (ii) disclosures contained in documents produced by Defendants; (iii) certain facts, allegations and claims originally asserted in the Junior Case; and (iv) spurious misrepresentations and disparaging false statement made by Defendants.

Ironically, the very fact that Defendants feel that they can, with impunity, take the positions that they do irrefutably establishes why, simultaneous with this motion being granted, Plaintiffs respectfully submit that Defendants' pending Motion to Dismiss the Senior Case in favor of the arbitration [Docket/Document No. 8] should be denied.

As one example, Plaintiffs direct the Court's attention to the declaration of Ms. Warren (**proffered by Defendants' counsel**), in which she avers that all of her files (i.e., the Case Files) are in Connecticut. (Docket/Document No. 32-1).  This fact is addressed in the paragraphs 57, 72 and 84 of Plaintiffs' First Amended Complaint wherein Plaintiffs also point out that Defendants continue to claim that Plaintiffs are in breach of the Agreements because of Mr. DeRosa-Grund's alleged failure to turn over the Case Files (indeed, it is a justification given by Defendants for withholding $2,277,390 which they admit that they have owed Plaintiffs since March 31, 2014). (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 57, 72, 84)).  The **only person** who knows where those Case Files are located and who can prove that Defendants' claim of breach is **patently false** is Ms. Warren.  Plaintiffs will need to take the third party deposition of Ms. Warren in Connecticut to nail down the fact that she has the Case Files and that the Defendants' claim of breach is false.  However, while such a deposition is possible in these proceedings - it is

NOT possible in the arbitration - which Plaintiffs submit is the reason behind Defendants' vociferous advocacy that this litigation must be deferred in favor of the arbitration, i.e., Defendants are using the arbitration proceedings to deprive Plaintiffs of their ability to defend themselves.

As yet another example, Plaintiffs direct the Court's attention again to the Lorraine Warren Direct Agreement produced by Defendants' counsel, and to the Third Cause of Action in Plaintiffs' First Amended Complaint wherein Plaintiffs allege on the basis of that document that New Line is guilty of tortious interference with the business relations between Plaintiffs and Ms. Warren. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 88-94)). The crux of the Third Cause of Action is that, after entering into the Agreements, New Line indicated to Plaintiffs that it wanted to enter into a "direct deal" with Lorraine Warren, i.e., the Lorraine Warren Direct Agreement. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 34-35, 76, 84, 88-94, 131-133)) At the time, there was no need for New Line to enter into the Lorraine Warren Direct Agreement because Plaintiffs solely and exclusively owned all rights related to the Warren's Life Stories, the Case Files, and Mr. DeRosa-Grund's story and treatment of the "Perron Farmhouse" Case File -- in other words, there was nothing Ms. Warren could grant or convey to New Line because Plaintiffs solely and exclusively held all of her rights. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 34, 90)) Thus, Plaintiffs advised New Line that they did not want New Line to enter the Lorraine Warren Direct Agreement. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 34, 90)). To convince and induce Plaintiffs to allow New Line to enter into a "direct deal" with Ms. Warren, New Line specifically and expressly represented to Plaintiffs that **none** of Plaintiffs' rights and/or benefits would be changed, altered, modified or otherwise effected by the Lorraine Warren Direct Agreement. (*See* Exhibit 1-A

(proposed First Amended Complaint at ¶¶ 34, 91-92))    Thus, relying on New Line's representation, the parties executed an Amendment to the Agreements.  (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 34, 91-93))  What New Line withheld from Plaintiffs was the fact that the Lorraine Warren Direct Agreement **substantially and materially** changed, altered, modified and affected Plaintiffs' right under the Agreements as well as under agreements executed between Plaintiffs and Ms. Warren (referred to as the "Warren Agreements" in the proposed First Amended Complaint).  (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 35, 93)).  In order to prove their claims of tortious interference, Plaintiffs will need to take the third party deposition of Ms. Warren in Connecticut to, in relevant part, substantiate that New Line was acting covertly in doing its deal with her.  However, while such a deposition is possible in these proceedings - it is NOT possible in the arbitration.

As yet other examples, Plaintiffs direct the Court's attention to the following blatantly false misrepresentations contained in papers filed by Defendants with the Court - which misrepresentations Defendants will most assuredly assert in the arbitration (as reflected by example #1 below and footnote #7), but which misrepresentations can only be refuted through procedures available in this Court (and not in the arbitration):

1. Ms. Warren represents in the declaration proffered by Defendants' counsel that:

> I have never entered into any of the alleged contracts with Evergreen Media Holdings, LLC or Tony DeRosa-Grund discussed in Plaintiffs' Complaint.

(Docket/Document # 32-1).  This statement is false and reflects an unfortunate but consistent pattern of lying by Ms. Warren regarding agreements she has signed, which Plaintiffs submit can only be established through discovery procedures available **in this Court** insofar as the parties do not have the ability to compel discovery in the Arbitration from Ms. Warren or from Mr.

Spera (who, at one point, called Mr. DeRosa-Grund to inquire about the status of Ms. Warren's payments under the Warren Agreements which she now falsely asserts she did not sign) (DeRosa-Grund Decl ¶ 5), or from other potential witnesses including Harrison Smith, John Gatti, Robert Unkel, John Zaffis, Judy Penny, Faust Checho, Ray Garton, Ralph Sarchie, Carl Glatzel Jr. and David Glatzel - individuals who have similarly found themselves confronted by Ms. Warren's lies and have been able to disprove her lies in each instance. (DeRosa-Grund Decl. ¶ 6).  However, while such depositions are possible in these proceedings - they are NOT possible in the arbitration.[7]

2.   Defendants state in their papers that Mr. DeRosa-Grund is a "competitor" and has a "history of abusive or threatening conduct toward New Line [and] Ms. Warren's family." (Docket/Document No. 33 at p. 3).  First, Mr. DeRosa-Grund is no more or less a "competitor" than any other producer, director or writer that works with Defendants on motion picture projects -- thus the allegation is not only wrong, but also irrelevant.  What is relevant is the fact that some of the compensation to which Mr. DeRosa-Grund is entitled based on "Annabelle" and "The Conjuring 2," e.g., contingent profit participation and Purchase Price payments for future sequel theatrical motion picture, hinges upon the domestic and international **success** of the productions. Thus, given that Mr. DeRosa-Grund has a vested interest in the **success** of "Annabelle" and "The Conjuring 2" - it is ludicrous for Defendants to try to suggest that he is a "competitor."  Second, Defendants' statement that Mr. DeRosa-Grund has a "history of abusive or threatening conduct toward New Line [and] Ms. Warren's family" is just a cheap shot and a misguided attempt to curry this Court's favor through hyperbole in the absence of facts or truth.  The statement is

---

[7] That the concern expressed by Plaintiffs that Defendants will attempt to rely upon these misrepresentations is undeniably well-founded is evidenced by Defendants' Motion to Dismiss in the Junior Case [Docket/Document No. 34] (specifically footnote 1), wherein Defendants rely upon the quoted portion from Ms. Warren's declaration as a basis for asserting the allegation that the Warren Agreements are not valid.

purely false.  While Mr. DeRosa-Grund has taken strong positions with Defendants, all of those positions were justified and, more importantly, made as part of privileged and confidential communications that were never released publicly. (DeRosa-Grund Decl. ¶¶ 7-11).   What Defendants conveniently fail to mention is that in the course of their communications with Mr. DeRosa-Grund, New Line has itself taken "strong positions," i.e., New Line has threatened Mr. DeRosa-Grund repeatedly, even going so far as to threaten to "bury" his credits purely in retaliation for Mr. DeRosa-Grund attempting to strongly assert and protect his own contractual rights under the Agreements. (DeRosa-Grund Decl. ¶¶ 7-11).  The only difference is that New Line has gone out of its way to publish its misrepresentations and disparaging false statements. The bottom line is that Defendants did not raise this allegation for any purpose other than to poison Plaintiffs' reputation and destroy his business so that they could get away with stealing Plaintiffs' rights - most notably, Plaintiffs' extremely valuable television rights, which television rights had been granted to Plaintiffs under the Warren Agreements and had been reserved by Plaintiffs in the Agreements.  Plaintiffs are entitled to establish through the depositions of representatives of New Line and also the "Warren family" that there is no legitimate basis for these disparaging false statements (indeed, to establish the irony that Defendants would make these statements inasmuch as the record clearly reflects that, if anyone was guilty of abusive and threatening conduct - it was the Defendants and the Warrens).  However, while such depositions are possible in these proceedings - they are NOT possible in the arbitration.

3. Defendants state in their papers that Mr. DeRosa-Grund cannot be trusted to respect the confidentiality of any confidential information that is disclosed to him (Docket/Document No. 33, p. 8).  These statements are false.  Defendants are well-aware that communications between the parties that were privileged and confidential have not been released to the public by

Plaintiffs. Defendants make this allegation in furtherance of their attempt to destroy Plaintiffs' character and business reputation in order to get away with stealing rights - most notably extremely valuable television rights worth potentially hundreds of millions of dollars - from Plaintiffs, which television rights had been granted to Plaintiffs under the Warren Agreements and had been reserved by Plaintiffs in the Agreements.  Plaintiffs are entitled to establish through the depositions of representatives of New Line and others, e.g., Writer Chad Hayes, Writer Carey Hayes and Director/Producer James Wan, that there is no legitimate basis for these disparaging false statements (indeed, to establish the irony that Defendants would make these statements inasmuch as the record clearly reflects that, if anyone was guilty of leaking anything about the prior privileged and confidential information that had been disclosed to Mr. DeRosa-Grund in the past, it was others). (DeRosa-Grund Decl. ¶ 11).   However, while such depositions are possible in these proceedings - they are NOT possible in the arbitration.

Unfortunately, the forgoing misrepresentations and disparaging false statements are not the only circumstances when Defendants have engaged in such conduct.  Defendants have vilified Plaintiffs -- and Mr. DeRosa-Grund in particular -- in the media and press and in the eyes of the public and so tarnished and injured Plaintiffs' business and reputation that Plaintiffs have been and continue to be severely damaged.   Thus, allegations concerning such misrepresentations and disparaging false statements are included in the proposed First Amended Complaint. (*See* Exhibit 1-A (proposed First Amended Complaint at ¶¶ 73, 141-148)).

## VI.    Conclusion

For the foregoing reasons, Plaintiffs request that the Court grant Plaintiffs' motion for leave to file an amended complaint and such other relief to which they may be justly entitled.  A proposed order is submitted herewith.

Respectfully submitted,

By:\_\_\_\_/s/ Sanford L. Dow_____
        Sanford L. Dow
        S.D. Texas No. 17162
        Texas Bar No. 00787392
        Nine Greenway Plaza, Suite 500
        Houston, Texas 77046
        (713) 526-3700/FAX (713) 526-3750
        dow@dowgolub.com

ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:
DOW GOLUB REMELS & BEVERLY, LLP
Stephanie A. Hamm
S.D. Texas No. 108779
Texas Bar No. 24069841
Nine Greenway Plaza, Suite 500
Houston, Texas 77046
(713) 526-3700/FAX (713) 526-3750
sahamm@dowgolub.com

GRIMES LLC
Charles W. Grimes - Connecticut Juris No. 304368
(admitted pro hac vice to S.D. Texas)
grimes@gandb.com
Michael R. Patrick - Connecticut Juris. No. 423632
(admitted pro hac vice to S.D. Texas)
patrick@gandb.com
488 Main Avenue
Norwalk, Connecticut 06851
Tel: (203) 849-8300/FAX: (203) 849-9300

## **CERTIFICATE OF CONFERENCE**

On July 25, 2014, the undersigned conferred with counsel for Defendants regarding the relief sought in this Motion.  As of the time of filing, Defendants are unable to take a position as to whether they are opposed.

By:\_\_\_\_/s/ Stephanie A. Hamm_____
        Stephanie A. Hamm

## <u>CERTIFICATE OF SERVICE</u>

On July 25, 2014, I electronically submitted the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas using the electronic case filing system of the Court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedures 5(b)(2).

By:  /s/ Stephanie A. Hamm
Stephanie A. Hamm